## CHARLES M. ROGERS *v.* FRANK COLVILLE.

### (*Nashville.* December Term, 1921.)

1. **APPEAL AND ERROR.** Motion for new trial necessary to appeal from judgment on stipulated facts.

   In a will contest, decided on stipulated facts, the defendant was required to move for new trial in order to appeal to the court of civil appeals from the judgment for plaintiff. (*Post, p.* 657.)

   Cases cited and approved: Railroad v. Egerton, 98 Tenn., 543; Road Comms. v. Railroad, 123 Tenn., 257; Shelton v. Wade, 139 Tenn., 685; Seymoor v. Railroad, 117 Tenn., 102; Barnes v. Noel, 131 Tenn., 126; Bostick v. Thomas, 137 Tenn., 101.

2. **APPEAL AND ERROR.** Objection to appeal for failure to move for new trial cannot be raised for first time on petition for rehearing.

   Objection to appeal on the ground that there was no motion for a new trial in the circuit court could not be made for the first time in petition for rehearing, after' the court of civil appeals had passed upon the case on its merits. (*Post, p.* 657.)

   Case cited and distinguished: Hamburger v. Railroad, 138 Tenn., 123.

3. **WILLS.** Testator's son, who purchased land at executor's sale, held not estopped from contesting will.

   Testator's son, who purchased real estate at executor's sale, was not, by reason thereof, estopped to contest the will on the ground of insanity, where neither the executor nor the beneficiaries were misled to their prejudice. (*Post, pp.* 657-659.)

4. **ESTOPPEL.** Not favored.

   Estoppels are not favored. (*Post, p.* 659.)

5. **ESTOPPEL.** One is not estopped unless his conduct has prejudiced rights of another.

Rogers v. Colville.

A party will not be estopped from asserting the truth or enforcing a right which he is otherwise entitled to, unless by his conduct another's rights have been prejudiced. (*Post, p.* 659.)

Cases cited and approved: Russell v. Colyar, 51 Tenn., 193; Hume v. Commercial Bank, 77 Tenn., 728.

6. **ESTOPPEL.** Doctrine of ''estoppel'' stated:

Estoppel is a branch of the law of evidence, and· has its foundation in fraud, not that there must be intentional fraud, but the person estopped is considered by his admissions, declarations, or conduct to have misled another tq his prejudice, so that· it would work a fraud to allow the true state of facts to be proven. (*Post, pp.* 659-667.)

Cases cited and approved: Decherd v. Blanton, 35 Tenn., 373; Reeves v. Hager, 101 Tenn., 712; Brant v. Virginia Coal, etc., Co., 93 U. S., 326; Steel v. St. Louis Smelting Co., 106 U. S., 447; Storm v. Baker, 150 U. S., 312; Galbraith v. Lunsford, 87 Tenn., 108; Taylor v. Railroad Co., 86 Tenn., 246; Lockett v. Kinzell, 99 Tenn., 713; Dickerson v. Colgrove, 100 U. S., 580; Miller v. Miller, 52 Tenn., 725.

Cases cited and distinguished: Taylor v. Railroad Co., 86 Tenn., 228; Elev. Light Co. v. Gas. Co., 99 Tenn., 383; Crabtree v. Bank, 108 Tenn., 483; Parkey v. Ramsey, 111 Tenn., 302.

---

FROM WARREN.

---

Appeal from the Circuit Court of Warren County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. J. W. Eaton, Special Judge.

Fairbanks & Willis and Jos. C. Higgins, for appellant. I. W. Smith and Seth M. Walker, for defendant.

MR. L. D. SMITH, Special Judge, delivered the opinion of the Court.

The controversy in this cause arises upon the petition of the plaintiff to contest the will of J. C. Biles, deceased, and involves only the question of whether he may do so. The right of the plaintiff to contest said will is challenged in this court upon the ground that the plaintiff is estopped by reason of having become the purchaser of a house and lot at a sale thereof made by the executor under the power conferred upon him by the will sought to be contested.

In 1915 J. C. Biles made a will by which he devised all of his property to his wife, Nellie Biles. Mrs. Biles died before the testator. On April 27, 1920, Mr. Biles executed the will sought in this cause to be contested, and by which he devised all of his property to his executor, the defendant Frank Colville, with power to sell and with direction to pay out the proceeds to certain legatees therein named.

The petition of contest alleged that at the time of making this last will the testator was mentally incapacitated to make a will, and by reason thereof the property of which he died the owner passed under the first will to the petitioner, who is the son by a former marriage of Mrs. Nellie Biles and her only heir at law.

When the contest came on for hearing in the circuit court it was agreed that, for the purpose of trying the preliminary question of whether Charles Rogers had the right to contest the will of J. C. Biles, the matter should be tried before the circuit judge upon the petition filed by said Rogers, the answer filed by the executor, and that the special plea of estoppel should be made a part of the answer, and that the only pleadings necessary to determine

the issue last referred to should be said petition and the answer thereto as amended. It was further agreed that the facts set forth in the petition were substantially true, except that it was not admitted that J. C. Biles was mentally incapacitated at the time he executed the alleged will, but all other facts alleged in the petition were admitted. It was further agreed that the facts set forth in the answer as amended and the facts relied on as constituting an estoppel to contest the alleged will were substantially true, and that the facts set forth in the petition and in the answer should be considered as all the evidence introduced on the trial of the issue of the right of the plaintiff to contest.

The agreed facts upon which the only question involving the right of the petitioner to contest are:

"At the time of his death, said J. C. Biles owned in fee simple, and which became a part of his estate for sale by the executor and distribution of its proceeds as a part of his general estate, a house and lot of land situated on West Main street in the town of McMinnville, Tennessee, and which was the home place of the said J. C. Biles, and which the executor was required to sell under the said last will and testament, for the aforesaid purpose, dated April 27, 1920, and probated in the county court of Warren county, Tenn., July 22, 1920, and which house and lot was first advertised for sale by the executor at the date suggested by the said Charles W. Rogers, the terms of the sale being one-third cash and the remainder in three equal installments, due 6, 12, and 18 months, for which deferred payments notes were to be executed by the purchaser bearing interest. The sale was advertised in a newspaper published in McMinnville, for October 29, 1920, the advertisement be-

ing made October 5, 1920. On the day of the sale so advertised, the said house and lot was offered for sale on said premises by the executor when the said Charles W. Rogers thereupon became the purchaser of said house and lot for the sum of $10,250, for which consideration he gave a short-term note to the executor for the cash payment and also executed his three several promissory notes, due in six, twelve, and eighteen months, dated October 29, 1920, in equal amounts and payable to said executor and delivered to him, whereupon, on October 30, 1920, said executor executed and delivered to said Rogers a deed conveying to him in fee simple said house and lot, and thereafter, on December 10, 1920, without having made any intimation to the executor that he (said Rogers) proposed to contest said will, said Rogers paid to the executor $2,000 on said cash consideration, and later, January 10, 1921, said Rogers paid to said executor $4,751.50 in satisfaction of the remainder of said cash consideration, the second due of said notes, interest thereon, and $1,000 due on said note, making a grand total of $6,751.50 paid by said Rogers to said Colville on the purchase price aforesaid. A few days before this last payment, said Rogers stated to Colville that he was going to contest said will, and said last payment was made on the same day, just immediately before or just after the said petition was filed. Said Rogers visited said J. C. Biles a short time after said will was made, and at the time of the sale and purchase of the aforesaid house and lot was cognizant of the mental condition of the said J. C. Biles when he made said will. At the time the said Rogers purchased the said house and lot he knew the contents of the will which he is now seeking to contest, and which will was at the time of record in the

county court of Warren county and had been probated; and that Frank Colville, the executor, deeded said house and lot to said Rogers, and warranted the title to said property.

"Defendant admitted that the paper writing referred to in the petition as having been probated on July 22, 1920, was so probated as the last will and testament of J. C. Biles, averred that at the time of the execution of said paper writing J. C. Biles was of sound mind, competent to make a will, that the contents of said paper writing were known to him, and that said paper writing was the true, valid, last will and testament of the said J. C. Biles. He admitted that he was nominated as executor in said paper writing, and that he had qualified and was acting as such; admitted that the legatees and beneficiaries mentioned in said paper writing were correctly set out in the petition, and averred that, since his qualification, he had paid a legacy of $1,000 to Joe R. Biles; admitted that he had in his possession the alleged will of 1915; that Mrs. Nellie Biles was made the residuary legatee and devisee under said will; neither admitted nor denied that said will of 1915 was regularly executed, but averred that, however that might be, the will of 1915 was superseded and annulled by the will probated on July 22, 1920. He admitted the death of J. C. Biles, and that Mrs. Nellie Biles died about two months before the death of the testator; that she was the mother of the petitioner, and that the petitioner was her only heir and distributee, and the executor denied that the contestant had any interest whatever in the estate of J. C. Biles."

The circuit court held that the plaintiff was not estopped from making the contest by reason of the facts above set

forth and pleaded in the answer as constituting an estoppel. The court of civil appeals reversed the judgment of the circuit court and dismissed plaintiff's contest. The action of that court is now before us for review upon petion for *certiorari* by the plaintiff below.

A preliminary question is raised, and that is that the court of civil appeals should have dismissed the appeal of the defendant to that court because he made no motion in the circuit court for a new trial. This question was not raised in the court of civil appeals by the plaintiff until after the court had disposed of the case on its merits and the opinion had been filed. It was raised thereafter in a petition to rehear filed within the time prescribed by the rules of that court for filing petitions to rehear. The petition to rehear raising this point was dismissed upon two grounds: First, that it was not necessary for the defendant to make a motion for new trial in order to have the judgment of the circuit court reviewed on appeal; and, second, that the plaintiff had waived his right to raise the question by his failure to make it until after the court had passed upon the case on its merits.

*Railroad* v. *Egerton,* 98 Tenn., 543, 41 S. W., 1035, and other cases along the same line, Cyc. and R. C. L. announce the rule followed, and are relied upon as authority for the first ground of the court's action. These authorities are in conflict with the latter cases decided by this court. *Road Comms.* v. *Railroad,* 123 Tenn., 257, 130 S. W., 768; *Shelton* v. *Wade,* 139 Tenn., 85, 203 S. W., 253; *Seymoor* v. *Railroad,* 117 Tenn., 102, 98 S. W., 174; *Barnes* v. *Noel,* 131 Tenn., 126, 174 S. W., 276; *Bostick* v. *Thomas,* 137 Tenn., 101, 191 S. W., 968.

Rogers v. Colville.

In this case the court based its decision upon the facts of the case which were stipulated, holding as a matter of law thereunder that the plaintiff was entitled to prosecute the contest. The stipulation appearing on the minutes does not make a case where the court's action appears as a part of the technical record so as to take the case out of the rule of cases which "harmonizes the practice in all cases coming to this court from the common-law courts." 123 Tenn., 257, 130 S. W., 768. This ground of the court's action cannot therefore be sustained.

We are of opinion that the contention of the plaintiff in this regard came too late. We have held that a similar contention cannot be made in this court for the first time. *Hamburger* v. *Railroad,* 138 Tenn., 123, 196 S. W., 144. We concur in the reasoning, and ruling of the court of civil appeals to the effect that—"Defendant in error having permitted this case to go to trial, having taken his chance to win on the proposition relied upon on the original hearing, and having lost, will not be permitted now to rely on a question of practice that could have been and should have been made on the original hearing, and especially so when no reason or excuse is suggested for not having raised the point before the opinion in the case was handed down."

This brings us to a consideration of the merits of the case. Do the facts operate to estop the plaintiff from pursuing his right otherwise existing to contest the will of J. C. Biles on the ground of mental incapacity?

The whole of the argument in favor of an affirmative answer to this question may be found in the following summing up in the opinion of the court of civil appeals:

"It is presumed that Mr. Rogers wanted the house and lot or he would not have purchased same. He is in the at-

145 Tenn.—42

titude, speaking from this record, as if he had said to the executor: 'I visited the testator a short time after said will was made, and at the time I suggested to you the date on which to advertise said house and lot for sale, and at the time I purchased said house and lot and accepted from you a deed with covenants of warranty, and at the time I paid the consideration for said house, and lot, I was cognizant of the mental condition of J. C. Biles at the time he undertook to execute the will upon which you had based your authority to act as executor and to sell said house and lot. I knew that said J. C. Biles was of unsound mind at the time he made said will; I therefore knew that the will was invalid, that you were not in fact executor, because there can be no executor when there is no will. I knew that you had no right to sell said house and lot or to make me a deed to same, and that you had no right to accept the consideration that I paid for same, nevertheless, I wanted the house and lot. I purchased it, and have a deed to it, and now I am going to contest the will that formed the basis of your authority when you sold the house and lot, deeded it to me, and accepted the consideration that I paid.

"We need not enter into a discussion of the effect that a successful contest of the will would have on the title of contestant to said house and lot. Contestant, by his actions, led the executor, and, through him, the beneficiaries of the will, to believe that, so far as the contestant was concerned, the will was valid, and he procured the executor to act on the assumption that the will was valid, and he procured from the executor a deed to the property that he wanted by concealing from the executor his now alleged knowledge that the will was invalid and by procuring the executor to act on the assumption that it was valid. In

view of these facts, we are of opinion that Mr. Rogers' position is wholly inconsistent with the position taken by him when he procured a deed to the house and lot, and that he is now estopped to insist upon the invalidity of the will under which he purchased."

This reasoning of the court, we think, overlooks many of the elements, and misapplies the doctrine of equitable estoppel.

Estoppels are not favored in the law. Indeed, it has been said that they are odious. *Russell* v. *Colyer,* 4 Heisk., 193; *Hume* v. *Commercial Bank,* 9 Lea, 728. This is for the reason that estoppel precludes a party from asserting the truth or enforcing a right which he is otherwise entitled to, and, therefore, unless by his conduct another's rights have been prejudiced, the principle will not be applied.

Estoppel is a branch of the law of evidence and has its foundation in fraud, considered in its most general sense, not that it is necessary that there be intentional fraud, but the person estopped is considered by his admissions, declarations, or conduct to have misled another to his prejudice, so that it would work a fraud to allow the true state of facts to be proven. Bigelow on Estoppel, 437; 10 R. C. L., 691..

In *Taylor* v. *Railroad Co.,* 86 Tenn., 228, 6 S. W., 393, this court approved of Mr. Bigelow's definition of estoppel wherein he sums up the requisites as: First, There must have been a representation or a concealment of material facts; second, the representation must have been made with knowledge; third, the party to whom it was made must have been ignorant of the truth of the matter; fourth, it must have been made with the intention that the other party should act upon it; and, fifth, the other party must

have been induced to act upon it. *Decherd* v. *Blanton*, 3 Sneed, 373.

We are unable to find fault, as did the court of civil appeals, with the statement of the rule found in 21 C. J., 1135, as follows:

"In order to create an estoppel, the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character, or have been induced to alter his position for the worse in some material respect. As otherwise expressed, where no available right is parted with and no injury suffered, there can be no estoppel *in pais*. And *a fortiori*, an act clearly beneficial to the persons setting up the estoppel, cannot be relied on. In the absence of injury, it is, of course immaterial that the other elements of estoppel are present."

This statement of the rule is not at all in conflict with the statement approved in *Electric Light Co.* v. *Gas Co.*, 99 Tenn., 383, 42 S. W., 19, or Greenleaf on Evidence, as follows:

"Admissions, whether of law or of fact, which have been acted upon by others, are conclusive against the party making them, in all cases between him and the person whose conduct he has thus influenced. It is of no importance whether they were made in express language to the person himself, or implied from the open and general conduct of the party; for, in the latter case, the implied declaration may be considered as addressed to every one in particular who may have occasion to act upon it. In such cases the party is estopped, on grounds of public policy and good faith, from repudiating his own representations."

Neither is the rule as stated at all modified by what is said in 21 C. J., p. 1202, 1122, respectively, as follows:

Rogers v. Colville.

"Where a person has, with knowledge of the facts, acted or conducted himself in a particular manner, or asserted a particular claim, title, or right, he cannot afterward assume a position inconsistent with such act, claim, or conduct to the prejudice of another who has acted in reliance on such conduct or representations. It is upon this just and equitable principle that a person is said to be estopped to take advantage of his own fraud or wrong. The doctrine of estoppel requires of a party consistency of conduct, when inconsistency would work substantial injury to the other party."

"Except in the case of an estoppel affecting the title to the land the rule, which in many cases is laid down apparently without qualification, that an estoppel must possess an element of fraud, does not mean that there should be an actual fraudulent intent or design to deceive on the part of the party sought to be estopped, but only that the case should be one in which the circumstances and conduct would render it a fraud for the party to deny what he had previously induced or suffered another to believe and take action upon."

The doctrine may be, as it has been, variously stated in its application to the particular facts, so much so that in a sense every case must depend upon its own peculiar facts and circumstances. While the range of the doctrine has broadened as a growing branch of the law, nevertheless it is to be guarded with great strictness, for the reason that an estoppel may exclude the truth, and no one should be deprived of setting up the truth unless it is in direct contradiction of his previous conduct and he has thereby induced another to act to his prejudice. Greenleaf on Evidence, section 26; *Decherd* v. *Blaton*, 3 Sneed, 373.

Now what is the conduct charged against the plaintiff which it is said precludes him from asserting the truth as to the testator's mental incapacity when the will in question was executed? It seems that he suggested to the executor a date upon which the home place of the testator should be sold. When it was offered for sale he became the purchaser and accepted a deed of conveyance and complied with the terms of sale by making payment of part of the purchase price and executing notes for the balance. It is quite apparent, we think, that the beneficiaries under this will have in no way been prejudiced by this conduct of the plaintiff. The will provided for the sale of all the testator's property and its distribution to certain beneficiaries. None of them were entitled to the property itself. They were only entitled to named portions of the proceeds of the sale thereof. There is no pretense that the property did not bring its full value. There is no pretense that the sale itself was brought about by the plaintiff. He merely suggested the date when the property might be sold, and purchased it, paying full value therefor. The beneficiaries can still receive every cent to which they are entitled, and they have not been deprived of anything by reason of this purchase by the plaintiff. There are certainly no reasons why they are in worse condition by reason thereof; neither have they been indirectly affected by any conduct of the executor based upon the purchase of the property by the plaintiff.

Before this conduct of the plaintiff the will had been probated in common form, and defendant had accepted the executorship conferred upon him, and had qualified as stated. He was proceeding with the carrying out of the provisions of the will, and the sale of this particular prop-

erty was but one of the things which he was required to do, and was doing it not by virtue of anything the plaintiff had done, but by virtue of the provisions of the will under which he was acting.

It is true that plaintiff in purchasing this property through the executor, so far as that transaction was concerned, recognized the power of the executor to make the sale, but the will had been probated and the executor had qualified, and a contest of the will in no way interfered with his power and authority in this respect. *Reeves* v. *Hager,* 101 Tenn., 712, 50 S. W., 760, and cases there cited. The plaintiff from his viewpoint, even assuming that he knew the mental condition of the testator, would derive no benefit by becoming the purchaser at this sale which he would not be entitled to if the sale were set aside. Certainly in taking this course his desire to become the owner of this particular property placed none of the beneficiaries nor the executor in any worse condition, and did not prejudice them in any right which they might have had if he had not become the purchaser of the property.

When it is said that a party is estopped from asserting the truth or claiming a right to which he is otherwise entitled, another must have acted to his prejudice. It is the same as having said that the party sought to be estopped has acted to his prejudice, and he has been placed in a worse condition by the conduct of that party. In other words, in order for the executor to successfully plead an estoppel, it must be made to appear by him that he acted differently than he would have acted but for the plaintiff's conduct. Or that he was prevented from acting by reason of that conduct. It is quite certain that Mr. Colville has not been prevented from taking any action as a result of

the plaintiff's conduct. Neither has he taken any action that he would not have otherwise taken. He has not been induced to do anything that he would not have done if a stranger had purchased this property.

The stipulation shows that the executor was the confidential friend of the testator. Presumably he was as well informed about his mental condition as the plaintiff or any one else. He has asserted in this contest that the testator has mental capacity to make this will. Nothing that the plaintiff has done has or can prejudice him in any way in resisting the contest. Of course, if it should be found that the testator was mentally incapacitated, the beneficiaries will be in a much worse plight and condition than if no contest was instituted, but that is entirely beside the question. Certainly the testator's mental capacity is not affected by anything the plaintiff has done. It was said by this court in *Crabtree* v. *Bank,* 108 Tenn., 483, 67 S. W., 797:

"For it is essential, as a general rule, to the application of the principle of equitable estoppel that the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the state of facts, but was also destitute of any convenient and available means of acquiring such knowledge; and that where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel. *Brant* v. *Virginia Coal,* etc., *Co.,* 93 U. S., 326; *Steel* v. *St. Louis Smelting Co.,* 106 U. S., 447; *Storm* v. *Baker,* 150 U. S., 312."

This is but another way of saying that the action or conduct of the party pleading estoppel was induced or brought about by the party against whom it is pleaded.

Where the party seeking estoppel knew the true condition of the title either in fact or in contemplation of law the doctrine will not avail him. *Galbraith* v. *Lunsford,* 87 Tenn., 108, 9 S. W., 365, 1 L. R. A., 522.

In *Parkey* v. *Ramsey,* 111 Tenn., 302, 76 S. W., 812, the court, speaking through Judge WILKES, as to the case of *Crabtree* v. *Bank,* supra, said:

"The gist of the decision is that there will be no estoppel when there was a mutual mistake as to the effect of a court record to which the persons to be affected were parties, and that when the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel."

The correctness of this principle is recognized in *Early Co.* v. *Williams,* 135 Tenn., 261, 186 S. W., 102. In that case it was said that the act relied on must have been done with the knowledge or intent that it would be relied on by the other. The statement above must be accepted in the sense that ignorance will not excuse where the representations which misled another were made by a party consciously ignorant of the matter to which they relate at the very time he professes knowledge. In such case liability may be predicated upon a wrongful assumption of knowledge. *Taylor* v. *Railroad Co.,* 86 Tenn., 246, 6 S. W., 393.

It is inconceivable that plaintiff could have intended by becoming the purchaser of this property to mislead the executor or the beneficiaries. He knew, of course, that the executor believed the testator to have mental capacity sufficient to make the will. He had given assurance of that faith by probating the will and qualifying as executor. He knew it made no difference to the executor or the beneficiaries under the will whether the property be left *in specie*

or be converted into cash. There is no reason for supposing that by purchasing this piece of property the testator would be induced to take any other course of action or be prejudiced in any other course of action.

It was held in *Lockett* v. *Kinzell,* 99 Tenn., 713, 42 S. W., 442, that a creditor was not estopped to assail the validity of an assignment for creditors by indicating to the assignee that he would take under the assignment, where neither the assignee, such creditor, nor any other creditor, has changed his attitude toward the trust property in any way in consequence thereof. It was said in *Dickerson* v. *Colgrove,* 100 U. S., 580, 25 L. Ed., 618, that the vital principle is that he who by his language or conduct leads one to do what he otherwise would not have done shall not subject such person to loss or injury by disappointment of the expectation upon which he acted.

In *Miller* v. *Miller,* 5 Heisk., 725, it was held that a widow was not estopped from contesting her husband's will by having dissented from it.

Applying these well-recognized principles of estoppel to the facts of this case, it seems wholly unimportant that Mr. Rogers wanted this particular house or that by purchasing it he acquired benefit. By acquiescing in the power of the executor and the validity of the will with respect to this particular property he in no way prejudiced anybody else's rights, and it is evident that the property was sold by the executor by reason of the provisions of the will, and not because of the mere suggestion of the plaintiff as to the date for the sale.

We must bear in mind that we are not dealing with a case in which the purchaser of land from an executor is seeking to avoid his purchase, or where he is attacking the title obtained. In such case it might be well said that;

having purchased the property with the knowledge of the fact that the testator was insane,· and the executor being ignorant of the fact, he was thereby precluded from repudiating his purchase. The plaintiff is not undertaking to question the sale. He is merely acquiescing in its validity, and before that can operate to estop him from questioning the sanity of the testator, it will have to be made to appear that the parties interested were ignorant of the true facts, and had been induced thereby to do some act to their prejudice or have been placed in a disadvantageous situation which they otherwise would not have been placed in. Whatever may be the result of this contest, which the executor can resist as well now as before, the sale to Rogers must stand. It will in no way be affected. The executor cannot be liable on his warranty. The beneficiaries can resort to the proceeds of the sale and obtain every benefit conferred upon them by the will just the same, and in fact will receive exactly the same benefit. The executor has not been made liable to anybody by reason of the plaintiff's conduct. It is true that he has taken charge of the estate, paid the indebtedness, and one of the legatees under the will, but it does not appear that this was all done after the plaintiff became the purchaser of the property, nor is there any fact shown in the stipulation justifying the conclusion that the executor can in any way be injured by that. Certainly it does not appear that the executor was induced to do these things by reason of the purchase by the plaintiff of this property.

We are of the opinion that the plaintiff is not estopped to contest this will, and the decree of the court of civil appeals to the contrary will be reversed, and that of the circuit court affirmed, and the cause remanded to that court for further proceedings not inconsistent with this opinion.