Marion Trust & Banking Co. v. Roberson.

MARION TRUST & BANKING CO. *v*. A. L. ROBERSON.*

(*Nashville.*   December Term, 1924.)

1. **CLERKS OF COURTS.** Clerk and master is a trustee.

A clerk and master, receiving proceeds of sale of lands of minor, is a trustee. (*Post, p.* 111.)

2. **TRUSTS.** Trustee placing trust funds to individual credit or using for his personal benefit is guilty of ''conversion.''

Whenever a trustee places trust funds to his individual credit, or uses them for his personal benefit, he is guilty of conversion. (*Post, p.* 111.)

3. **CLERKS OF COURTS.** Bill held to charge clerk and master with diversion of fund belonging to another to his personal use.

Bill to recover interest on fund of which defendant came into possession as clerk and master, on theory that he had wrongfully used fund for his personal benefit, *held* to fairly charge defendant with a diversion of fund to his personal use.   (*Post, pp.* 111-114.)

4. **PLEADING.** Allegations of bill taken as true on demurrer.

Allegations of a bill are taken as true on demurrer.   (*Post, pp.* 111-114.)

5. **CLERKS OF COURTS.** Defendant liable for interest if diverting fund as clerk and master to his personal use.

If defendant coming into possession, as clerk and master of a fund belonging to complainant's wards, diverted such fund to his personal use, he would be liable for interest thereon.   (*Post, pp.* 111-114.)

Cases cited and approved: Schieffelin v. Stewart, 1 Johns. Ch., 620; Raphael v. Boehm, 11 Ves., 92; Governor v. McEwen, 24 Tenn., 241; Perkins v. McGavock, 6 Tenn., 265.

Marion Trust & Banking Co. v. Roberson.

Cases cited and distinguished: Turney v. Williams, 15 Tenn., 213; Cannon v. Apperson, 82 Tenn., 579.

*Headnotes 1. Clerks of Courts, 11 C. J., Section 77; 2. Trusts, 39 Cyc., p. 328; 3. Clerks of Courts, 11 C. J., Section 120; 4. Equity, 21 C. J., Section 489; 5. Clerks of Courts, 11 C. J., Section 109.

### FROM MARION.

Appeal from the Chancery Court of Marion County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. T. L. STEWART, Chancellor.

A. R. HALL, for Banking Co.

L. R. DARR, for Roberson.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The bill in this cause was filed by the complainant, as guardian of two minors, to recover interest on a fund which A. L. Roberson came into possession of as clerk and master, upon the theory that he had wrongfully used the fund for his personal benefit.

The chancellor sustained a demurrer to the bill, and dismissed the suit. Upon appeal his decree was affirmed by the court of civil appeals. The cause is before us upon petition for *certiorari* filed by the complainant for the

purpose of having the decree of the court of civil appeals reviewed.

The bill alleges the sale of a tract of land, belonging to complainant's wards, in the chancery court, and the receipt of the proceeds by defendant, then clerk and master, in the sum of $1,733.34 in the year 1918; that Roberson was succeeded in the office of clerk and master by S. L. Havron in September, 1919, and that defendant failed to pay over said fund to his successor, and failed to make and file a financial statement as to the affairs of his trusteeship upon going out of office; that defendant had the personal use and benefit of said fund from the date that his successor was appointed and qualified in September, 1919, up until the 26th day of March, 1923, when he paid into the court the sum of $1,633.34; that demand has been made by the clerk and master and complainant for interest on said fund since September, 1919, which defendant declined to pay upon the ground that no demand had ever been made upon him for said money. The bill charges that this is not a valid excuse, for the reason that defendant has had the personal use of the funds during said period.

The bill was amended so as to pray for interest also from the date that defendant received said fund up to September, 1919. The two grounds of demurrer are as follows:

"(1) The petitioner doesn't allege that it had made demand or application for the moneys due it as guardian from this respondent or his successor in office, and hence the money has been *in custodia legis*, and would not bear interest.

"(2)   The petitioner doesn't allege that it had complied with the requirements of the decree which it alleges ordered the money paid to it, and thereafter made demand or application for the same which was refused, and hence the fund has been *in custodia legis,* and would not bear interest."

Upon principle, and authority, a clerk and master is a trustee, and this is conceded. It is also a fundamental principle of law that, whenever a trustee places trust funds to his individual credit, or uses them for his personal benefit, he is guilty of a conversion.

While the bill is not as full and as clear in its allegations as it might be, it fairly charges the defendant with a diversion of the fund to his personal use. If this is true, and it must be so treated upon demurrer, then, under all of the decisions, the defendant would be liable for interest.

In 29 Cyc., 1456, it is said: "In all cases of misappropriation by an officer of funds which have legally come into his possession, his sureties are liable, not only for the amount misappropriated, but also for interest, which is sometimes so high as to constitute a penalty from the time of the misappropriation.

And in 17 Corpus Juris, 812, it is said: "Hence, where money belonging to another is not paid over to the person entitled to receive it at the time it should be paid over, interest will be allowed for the detention, and interest will likewise be allowed where a person conceals the receipt of money from the person to whom he should pay it, or fails promptly to apply such money in accordance with his duty, or where he makes use of it for his own profit."

Numerous cases are cited in support of the above texts
In *Turney* v. *Williams*, 7 Yerg., 213, 214, this court said:

"Formerly, executors were not charged with interest,
but, ever since the time of Lord Thurlow, they have been
held liable to pay interest, according as the circum-
stances of each case may justify. Interest is not charge-
able against them as a matter of course. When the exi-
gencies of an estate require an executor to keep money
by him; where he has not unreasonably delayed a settle-
ment of his accounts; where he has made, promptly, a
just and true exhibition of the receipts and disburse-
ments, he is not to be charged with interest on any ac-
cidental amount he may have had in his hands, and upon
which he received no interest. 3 Des. Eq., 241; 13 Mass.,
233; Jer. Eq., Juris., 144-146. But on the other hand, if
an executor makes interest, he is chargeable with it, and
as the fact, whether he has actually received a profit
from the estate or not, can scarcely ever be directly
proved, courts of chancery have adopted certain rules,
by which, from the existence of given facts, it is pre-
sumed that a profit was received by the executor. The
authorities above quoted, and which are relied on by the
counsel for the defendant, show that, where an executor
uses the money of the estate for himself, where he keeps
the money by him without a reasonable ground for doing
so, where by long delay in settling his accounts the use
of the money by him may be inferred—in all such cases
interest will be charged. This rule is not adopted with
a view to punish an executor or trustee, but with a view
to reach the profits, which, from these facts it is to be
presumed he may have made. 1 Johns. Ch., 510, 620;

1 Ves., 247; 4 Ves., 620; 7 Ves., 124; 3 Des., 244. In the case of *Schieffelin v. Stewart* and others, 1 Johns. Ch., 620, Chancellor Kent reviews the English cases upon this subject, and lays down the rule that an executor or other trustee is not allowed to make gain or profit from the use of the funds committed to him in trust, that, if he negligently suffer the moneys to lie idle, he is chargeable with simple interest; but, if he convert them to his own use, he is chargeable with compound interest. And this is the only possible way of reaching the profits which the executor or other trustee may have made. If the moneys are retained a length of time in his hands, when the exigencies of the trust did not require it, the inference is irresistible that the fund has been so retained that it might be employed for the private benefit of the trustee, and, if upon that presumption, he could not be charged with interest, an executor could easily make an estate worth more to himself than to the legatees, especially if they were young when the estate might come into his hands. Such a consequence could not be tolerated by any principle of justice.''

In *Cannon v. Apperson,* 14 Lea, 579, it was said: ''No principle is better settled or founded upon a sounder basis of legal ethics and positive law than the principle which declares that, whoever undertakes to act for another in any matter shall not, in the same matter, act for himself, and this without regard to the fact whether he has or has not made a profit by the act. Equity disallows the measure without reference to advantages or unfairness, and treats it as a breach of trust, charging the trustee accordingly. *Perkins* v. *McGavock,* 3 Hay.,

265.   The authorities are uniform to this effect.   If, therefore, a personal representative or other trustee use the trust funds himself, or deposit them to his own credit, or loan them to a firm of which he is a member, it is a breach of trust, and the trustee becomes at once chargeable with interest.   *Raphael* v. *Boehm,* 11 Ves., 92; *Schieffelin* v. *Stewart,* 1 J. Ch., 624; *Governor* v. *McEwen,* 5 Hum., 241.''

It is just as wrongful for a clerk and master to convert funds as it is for an executor or any other trustee to do so.   The principle is identical.

To say that a party can wrongfully divert and use trust funds to his profit and then escape liability for interest would be to invite such officers to misappropriate funds, and to profit by this own wrongs.

The decree of the court of civil appeals and the chancellor will be reversed, the demurrer overruled, and the cause remanded for answer and poof.

The costs of the appeal will be paid by the defendant.