FILED

12/18/2020

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 10, 2020 Session

## JENNIFER CARMAN ET AL. V. JOSHUA KELLON ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 2017-674     Michael Binkley, Judge**

_____

### No. M2019-00857-COA-R3-CV

_____

A jury found the mother of an adult child liable for negligent entrustment after the adult child injured a jogger while driving his truck. The mother moved for a directed verdict at the close of the plaintiff's proof, which the court denied. After the jury returned verdicts for the plaintiffs, the mother failed to file a post-trial motion seeking a new trial. On appeal, we conclude that the mother waived her right to contest the trial court's denial of her motion for a directed verdict by failing to file a motion asking for a new trial as required by Tenn. R. App. P. 3(e).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Lance Brandon Mayes, Brentwood, Tennessee, for the appellants, Joshua Kellon and Dayne Kellon.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, Joseph Paul Ahillen, Senior Assistant Attorney General, and Michael Andrew Womack, Assistant Attorney General, for the appellant, State of Tennessee.

Brandon Eric Bass and Elizabeth Noel Sitgreaves, Brentwood, Tennessee, for the appellees, Jennifer Carman and Shaun Carman.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Joshua Kellon was driving a pickup truck on March 5, 2017, when he struck Jennifer Carman, who was jogging along the side of the road in Williamson County. Ms. Carman suffered extensive injuries as a result of the accident, and she, along with her husband, filed a complaint against Mr. Kellon for damages, asserting that he was liable for negligence, negligence per se, and recklessness. The Carmans also named Mr. Kellon's mother, Dayne Kellon, as a defendant, claiming she was liable under the theories of vicarious liability and negligent entrustment.

Ms. Kellon moved for summary judgment, arguing that she was not liable as a matter of law under a theory of either vicarious liability or negligent entrustment because she was out of town on the day of the accident and had no ownership interest in the truck Mr. Kellon was driving. The trial court granted Ms. Kellon's motion as to vicarious liability, but it denied the motion with respect to negligent entrustment. According to the court,

> [T]here is no dispute that Ms. Kellon did not purchase the vehicle for Joshua. The vehicle is titled solely in Joshua's name and there is no indication on the title that Ms. Kellon possesses any ownership or security interest in the vehicle entitling her to control over its use. Moreover, the facts in the record are devoid of any proof indicating that Ms. Kellon's financial support of Joshua provided him the means to operate the vehicle on March 5, 2017, when the injuries to Ms. Carman took place. The record, however, does contain facts from which a jury could find that Ms. Kellon enabled her son to some extent. For example: she supplied money for gas and made loan payments at a time when Joshua had little or no income. Moreover, while there is no evidence Ms. Kellon knew of Joshua's mental and physical state on the date of the injury to Ms. Carman, there is evidence Ms. Kellon . . . knew of Joshua's drug and alcohol use and history of impaired driving. Whether there is a causal connection between the financial support and the subsequent accident is for the jury to determine. Likewise, whether Ms. Carman's injuries caused by Joshua's driving were reasonably foreseeable to a degree sufficient to satisfy causation is a question for the jury.

The case was tried on the 25th, 26th, and 27th of March, 2019. The defendants moved for a directed verdict at the close of the plaintiffs' evidence, which the trial court denied. The jury returned verdicts finding Mr. Kellon liable for recklessness and finding Ms. Kellon liable for negligent entrustment. The jury apportioned fault between the defendants, finding Mr. Kellon 60% at fault and Ms. Kellon 40% at fault, and awarded the plaintiffs economic and noneconomic damages that totaled over thirteen million dollars in

addition to punitive damages. The trial court issued an Order Entering Trial Judgment on April 15, 2019. Consistent with the requirements of Tenn. Code Ann. § 29-39-102, the trial court reduced the jury's noneconomic damages award to Ms. Carman against Ms. Kellon to $295,652.17.[1] The trial court entered judgment for Ms. Carman against Ms. Kellon for economic damages in the amount of $1,846,070.94. It entered judgment for Ms. Carman against Mr. Kellon in the amount of $4,662,329.90 for noneconomic damages,[2] $2,769,106.41 for economic damages, and $2,500,000 for punitive damages. Mr. Carman was awarded $4,347.83 against Ms. Kellon and $68,563.67 against Mr. Kellon for his loss of consortium claim. Neither defendant filed any post-trial motions with the trial court.[3]

Ms. Kellon appeals the trial court's judgment against her. She contends that the trial court erred as a matter of law in denying her motion for a directed verdict on the negligent entrustment claim. In the alternative, she argues that the trial court committed "plain error" in failing to grant her a directed verdict on the Carmans' claim for negligent entrustment.

II. ANALYSIS

A. Motion for Directed Verdict

The Carmans argue that Ms. Kellon waived her right to appeal the trial court's denial of her motion for a directed verdict by failing to file a post-trial motion. Pursuant to Tennessee Rule of Appellate Procedure 3(e), "in all cases tried by a jury, no issue presented for review shall be predicated upon . . . [an] action committed or occurring during the trial of the case . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." A motion for a new trial "shall be filed and served within 30 days after judgment has been entered . . . ." TENN. R. CIV. P. 59.02. The

---

[1]Tennessee Code Annotated section 29-39-102 limits each plaintiff's compensation for noneconomic damages to $750,000, which is to be apportioned among the defendants if there is more than one. Tenn. Code Ann. § 29-39-102(a)(2), (b).

[2]The limits of Tenn. Code Ann. § 29-39-102 do not apply to the noneconomic damages award against Mr. Kellon because he pled guilty to a felony causing serious bodily injury to Ms. Carman. *See* Tenn. Code Ann. § 29-39-102(h)(4).

[3]The Carmans filed a post-trial motion challenging the trial court's reduction of their noneconomic damages, claiming that Tenn. Code Ann. § 29-39-102 was unconstitutional because it violated their right to trial by jury. The trial court agreed and amended its previous judgment accordingly by memorandum and order entered on August 7, 2019. The State's Attorney General intervened in the case to defend the constitutionality of the statute and filed a notice of appeal as intervenor. The Tennessee Supreme Court addressed the statute and found it to be lawful after this appeal was initiated. *See McClay v. Airport Mgmt. Servs., LLC*, 596 S.W.3d 686, 693 (Tenn. 2020). Following the issuance of the *McClay* opinion, the Carmans retracted their challenge of the statute's constitutionality in their appellate brief, and requested that we reinstate the trial court's initial judgement entered on April 15, 2019, which reduced their award of noneconomic damages to comply with the mandates of the statute.

defendants stated in their notice of appeal that they were appealing the trial court's order dated April 15, 2019.

In *Mires v. Clay*, a case involving a breach of contract that was tried by a jury, the defendant raised four issues on appeal. *Mires*, 3 S.W.3d 463, 466 (Tenn. Ct. App. 1999). One of the issues was whether the trial court had erred in failing to direct a verdict in the defendant's favor. *Id.* At trial the defendant moved for a directed verdict when the plaintiff rested her case, and he renewed his motion after completing the presentation of his proof. *Id.* at 468. The defendant failed, however, to file a post-trial motion for judgment notwithstanding the verdict or for a new trial. *Id.* Concluding that the defendant waived his right to appeal the trial court's denial of his motion for directed verdict, we stated that "when the alleged error is the failure of the trial court to grant a directed verdict, either a motion for a new trial or a post-trial motion seeking entry of judgment in accordance with a motion for directed verdict made at trial (judgment n.o.v.) is sufficient to preserve the issue for appeal." *Id.* (citing *Cortez v. Alutech, Inc.*, 941 S.W.2d 891, 894-95 (Tenn. Ct. App. 1996)). "Failure to file either of these post-trial motions," we explained, "denies 'the trial judge the opportunity to consider or reconsider alleged errors committed during the course of trial' and precludes appellate review of that issue." *Id.* (quoting *Cortez*, 941 S.W.2d at 894-96); *see also Creech v. RMRTN Chatt, LLC*, No. W2017-01541-COA-R3-CV, 2018 WL 4334162, at *6 (Tenn. Ct. App. Sept. 11, 2018) (citing Tenn. R. App. P. 3(e), court held appellants waived their right to appeal trial court's denial of their motion for directed verdict by failing to raise denial in their motion for new trial); *In re Estate of Calfee*, No. E2000-01720-COA-R3-CV, 2001 WL 584248, at *2 (Tenn. Ct. App. May 31, 2001) ("Even if a motion for a directed verdict had been made at trial, Appellants' failure to file any post-trial motion on this issue prohibits appellate review.").

In *Waters v. Coker*, a case involving medical malpractice, the plaintiffs objected to a portion of the jury instructions. *Waters*, 229 S.W.3d 682, 685 (Tenn. 2007). The plaintiffs filed a post-trial motion seeking a new trial, but they failed to mention the jury charge as a ground for relief. *Id.* The first time the plaintiffs raised an objection to the jury charge was on appeal to the Court of Appeals. *Id.* The Court of Appeals granted the plaintiffs a new trial, but the Tennessee Supreme Court reversed the decision of the Court of Appeals. *Id.* at 690. Citing Tenn. R. App. P. 3(e), the Court held that the plaintiffs had waived their right to appeal the jury charge issue by failing to raise that issue in their post-trial motion. *Id.* at 689-90. The Court wrote:

> In all civil cases tried to a jury, any ground not cited in the motion for new trial has been waived for the purposes of appeal. *Boyd v. Hicks,* 774 S.W.2d 622, 625 (Tenn. Ct. App. 1989). The issues presented in a motion for new trial must be specified with reasonable certainty so as to enable appellate courts to ascertain whether the issue was first presented for correction in the trial court; otherwise, the matter cannot be considered on appeal. *State v. Gauldin,* 737 S.W.2d 795, 798 (Tenn. Crim. App. 1987). . . . Although

appellate courts should view a motion for new trial in the light most likely to consider a specific question, the preservation of the issue in some form is essential for review. *Fahey v. Eldridge,* 46 S.W.3d 138, 143 (Tenn. 2001).

*Id.* at 689. The Supreme Court explained that the reason for the rule was to allow the trial court "'to rectify any errors that might have been made at trial and to avoid "appeal by ambush."'" *Id.* at 689 (quoting *Mason v. Tenn. Farmers Mut. Ins. Co.*, 640 S.W.2d 561, 563 (Tenn. Ct. App. 1982)). The Court also cited Tenn. R. App. P. 36(a), which states, in part, that "Nothing in this rule shall be construed as requiring relief be granted to a party . . . who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." *See Waters*, 229 S.W.3d at 689. The Court noted that "[t]ypically, an issue not brought to the trial court's attention in the motion for new trial cannot be raised on appeal unless it amounts to plain error 'seriously affect[ing] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 690 (quoting *Manning v. State*, 500 S.W.2d 913, 914 (Tenn. 1973)). The Court did not address the issue of plain error any further because the plaintiffs in *Waters* failed to argue plain error. *Id.*

Ms. Kellon waived her right to appeal the trial court's denial of her motion for a directed verdict by failing to file a motion for a new trial, as required by Tenn. R. App. P. 3(e).

B. <u>Plain Error</u>

Ms. Kellon makes the alternative argument that the trial court committed plain error when it denied her motion for a directed verdict and that her failure to file a post-trial motion should not bar her right to have this court consider her argument that the trial court erred in denying her motion. Despite the *Waters* Court's reference to this doctrine, Ms. Kellon cites no cases that are not criminal in nature in which plain error has been applied. In its brief mention of plain error, the *Waters* Court cited the criminal case *Manning v. State*, 500 S.W.2d 913 (Tenn. 1973), which addressed plain error as follows:

"In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings."

*Manning*, 500 S.W.2d at 914 (quoting *Silber v. United States*, 370 U.S. 717, 718 (1962)).

The Tennessee Supreme Court has listed the factors a court should consider in determining whether an alleged error constitutes "plain error":

"(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be established before a court will find that plain error existed at the trial court level. *Id.* at 283. Although not specifically stated, the use of the term "accused" suggests that this doctrine is generally applicable to criminal cases rather than to civil cases, such as the one under consideration. "The defendant bears the burden of persuading an appellate court that plain error exists." *State v. Willis*, 496 S.W.3d 653, 707 (Tenn. 2016) (citing *State v. Dotson*, 450 S.W.3d 1, 49 (Tenn. 2014)).

In arguing that we should find the trial court committed plain error, Ms. Kellon makes the unsubstantiated statements that "[i]t is unequivocal that a rule of law has been breached, that law being the law of Negligent Entrustment" and that "[t]he substantial rights of Appellant Dayne Kellon have been breached." Ms. Kellon has failed to carry her burden of persuading us that the trial court engaged in plain error by denying her motion for a directed verdict.

## III. CONCLUSION

We dismiss Ms. Kellon's appeal of the trial court's denial of her motion for directed verdict and reject her argument that the trial court committed plain error by denying her motion. The trial court's judgment entered on April 15, 2019, is the operative judgment, in which the noneconomic damages awarded against Ms. Kellon were reduced in accordance with Tenn. Code Ann. § 29-39-102. Costs of this appeal are assessed against the appellants, Dayne and Joshua Kellon, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE